Gregory P. Sitrick
Arizona Bar No. 028756
gsitrick@messner.com
MESSNER REEVES LLP
7250 N. 16th St., Suite 410
Phoenix, Arizona 85020
Telephone: 602.457.5059
Facsimile: 303.623.0552

Carolyn S. Toto (pro hac vice pending)
carolyn.toto@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone:  213.488.7100
Facsimile:   213.629.1033

Michelle A. Herrera (pro hac vice pending)
michelle.herrera@pillsburylaw.com
PILLSBURY WINTHROP SHAW PITTMAN LLP
12255 El Camino Real, Suite 300
San Diego, CA 92130
Telephone:   619.544-3132
Facsimile:    619.236.1995

*Attorneys for Plaintiff*
*King Taco Restaurant, Inc.*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| King Taco Restaurant, Inc.,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>Taco Kings LLC, Taco Kings #2 LLC, and Taco Kings #3 LLC,<br><br>　　　　　Defendants. | Case No.<br><br>COMPLAINT FOR:<br>(1) FEDERAL TRADEMARK INFRINGEMENT [15 U.S.C. §1114]; AND<br>(2) FEDERAL UNFAIR COMPETITION [15 U.S.C. §1125(A)].<br><br>Demand for Jury Trial |

-1-

Plaintiff King Taco Restaurant, Inc. ("King Taco") alleges as follows:

**JURISDICTION AND VENUE**

1. This is a civil action seeking monetary damages and injunctive relief under federal law based upon trademark infringement and unfair competition by defendants Taco Kings LLC, Taco Kings #2 LLC, and Taco Kings #3 LLC (collectively, "Defendants" or "Taco Kings").

2. Defendants operate one or more restaurants selling tacos and other Mexican foods in Casa Grande, Arizona, under the name "Taco Kings." Defendants also use the name "Taco Kings" in connection with various social media sites like Facebook, Instagram, and Yelp to advertise and promote their restaurant services to consumers, and registered "Taco Kings AZ" as a trade name with the Arizona Secretary of State on January 26, 2022.

3. King Taco owns several federal trademark registrations protecting its KING TACO mark in connection with restaurant services as well as other goods and services. King Taco's restaurants sell tacos and other Mexican foods.

4. Defendants' use of the nearly identical mark in connection with the same goods and services is likely to confuse and mislead the consuming public, and injure King Taco, by causing consumers to believe incorrectly that Defendants' products and restaurant services originate from, are affiliated with, or are authorized by King Taco.

5. The Court has federal question jurisdiction under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) over King Taco's First and Second Claims for Relief for infringement of federally registered trademarks and unfair competition because the claims arise under an act of Congress relating to trademarks.

6. This Court has personal jurisdiction over Defendants, and venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b), because Defendants are incorporated in and operate one or more restaurants within this venue.

7. Defendants are infringing King Taco's federally protected trademark rights within this judicial district.

8. King Taco is informed and believes, and based thereon alleges, that Defendants also use interactive social media sites through which they advertise and promote their restaurant and services online in this venue and throughout the United States.

## THE PARTIES

9. King Taco is a California corporation having its principal place of business in City of Commerce, California. King Taco operates a chain of quick-service restaurants specializing in a variety of Mexican foods.

10. King Taco is informed and believes, and based thereon alleges, that Defendants are Arizona limited liability companies having principal places of business at 1328 E. Florence Blvd., Casa Grande, AZ 85122 and at 515 E. Kachina Ave., Apache Junction, AZ 85119.

## KING TACO'S BUSINESS AND MARKS

11. Founded in 1974, King Taco began its operation from a converted ice cream truck, serving tacos and other Mexican foods to its customers. Over the course of the past 45 years, King Taco remains a family-owned and operated business and has since expanded to 22 popular locations with plans to continue expanding.

12. King Taco currently operates a well-recognized chain of quick-service restaurants specializing in a variety of Mexican foods and servicing over 80,000 customers every week. King Taco has been recognized by prominent food critics and has also placed within the top 100 of Hispanic Business Magazine's "Top 500 Hispanic Business." Over the decades, King Taco's food has garnered a devout following of fans, from celebrities to politicians. Accordingly, King Taco has amassed tremendous consumer goodwill over the last four decades.

13. King Taco owns a family of marks, along with the goodwill associated therewith, that are used in and in association with its restaurants, including the following valid and subsisting United States trademark registrations (collectively, the "King Taco Marks") registered on the Principal Register of the United States Patent and Trademark Office (the "USPTO"):

| Exhibit | Mark | U.S. Reg. No. | Registration Date | Description of Services or Goods |
|---|---|---|---|---|
| A | KING TACO (& Design) | 2,853,050 | 6/15/2004 | Restaurant, take-out restaurant services (IC 043) |
| B | KING TACO RESTAURANTS, INC. (& Design) | 2,838,199 | 5/4/2004 | Restaurant, take-out restaurant services (IC 043) |
| C | KING TACO | 2,838,200 | 5/4/2004 | Restaurant, take-out restaurant services (IC 043) |
| D | KING TACO (& Design) | 6,072,875 | 6/9/2020 | Restaurant, take-out restaurant services (IC 043) |
| E | KING TACO | 6,409,257 | 7/6/2021 | Headphones and cell phone holders (IC 09); Jewelry, namely, watches and lapel pins (IC 014); Tote bags, travel bags, athletic bags, purses, and back packs (IC 018); Mugs, drinking glasses, tumblers, cups, non-electric portable coolers, and ice chests (IC 021); Clothing, namely, long and short-sleeved t-shirts, sports shirts, athletic tops, athletic bottoms, athletic uniforms, athletic footwear, athletic headwear, sweatshirts, polo shirts, jackets, shorts, pants, hats, and socks (IC 025) |
| F | KING TACO (& Design) | 6,409,258 | 7/6/2021 | Headphones and cell phone holders (IC 09); Jewelry, namely, watches and lapel pins (IC 014); Tote bags, |

-4-

| Exhibit | Mark | U.S. Reg. No. | Registration Date | Description of Services or Goods |
|---|---|---|---|---|
| | | | | travel bags, athletic bags, purses, and back packs (IC 018); Mugs, drinking glasses, tumblers, cups, non-electric portable coolers and ice chests (IC 021); Clothing, namely, long and short-sleeved t-shirts, sports shirts, athletic tops, athletic bottoms, athletic uniforms, athletic footwear, athletic headwear, sweatshirts, polo shirts, jackets, shorts, pants, hats, and socks (IC 025) |

14. True and correct copies of the registration certificates for the Federal Registered Marks are attached hereto as **Exhibits A-F**, respectively, and are incorporated by reference.

15. Many of these King Taco Marks are incontestable registrations pursuant to 15 U.S.C. § 1065.

16. King Taco owns all right, title and interest in and to the King Taco Marks.

17. The King Taco Marks have been used in interstate commerce to identify and distinguish King Taco's restaurant and take-out services for decades, and they serve as symbols of King Taco's quality, reputation, and tremendous goodwill.

18. King Taco makes use of its King Taco Marks in interstate commerce by displaying them on product packaging, menus, signage, and promotional and advertising materials disseminated both via the Internet and in print.  King Taco has an official website at https://kingtaco.com and has advertised and promoted the King Taco Marks through that website and various social media accounts.  King Taco also offers, sells, and ships merchandise bearing the King Taco Marks to the 50 states.

19. King Taco has invested substantially in developing, advertising and otherwise promoting the King Taco Marks in the United States in an effort to create a strong association among King Taco's services, its menu-offerings, its consumer goodwill, and its King Taco Marks.

20. As one example, for many years, King Taco has expended a significant amount of money for sponsorships in connection with NASCAR, IndyCar, and other race events in different states to promote its name and restaurants on a national level. King Taco has been a sponsor at NASCAR events for the past 12 years and a sponsor at IndyCar events for more than 20 years. The King Taco Marks are prominently displayed on cars and/or around the racetrack at these well-attended and nationally televised events.

21. King Taco has invested millions of dollars in developing, advertising and otherwise promoting the King Taco Marks in the United States in an effort to create a strong association between its products and services, its consumer goodwill and the King Taco Marks.

22. Due to the care and skill exercised by King Taco in the conduct of its business and the high quality of its services offered under its King Taco Marks, and the extensive advertising, sale, and promotion of the King Taco Marks, the King Taco Marks have acquired secondary meaning throughout the United States, and they are widely recognized by the general consuming public as a designation that King Taco is the source of the goods and services bearing the King Taco Marks.

23. Since the date of first use of each of the King Taco Marks, King Taco has intended to maintain exclusive ownership of the King Taco Marks and to continue use of the King Taco Marks in interstate commerce in connection with King Taco's restaurant services.

24. King Taco has also carefully monitored and policed the use of the King Taco Marks and maintains tight control over the use of the King Taco Marks across the United States. King Taco has diligently and successfully enforced its trademark rights against infringements throughout the United States.

**DEFENDANT'S INFRINGING ACTS**

25. Defendants are in the same industry as King Taco because Defendants operate one or more restaurants specializing in Mexican foods.

26. King Taco is informed and believes, and based thereon alleges, that Defendants are operating a restaurant selling Mexican foods at 1328 E. Florence Blvd., Casa Grande, AZ 85122, with the name "TACO KINGS" displayed prominently in front of the restaurant and used in connection with Defendants' online and print advertising.

27. King Taco is also informed and believes, and based thereon alleges, that Defendants are operating or plan to operate additional restaurants selling Mexican foods in Arizona using the name "TACO KINGS," as evidenced by registrations on the Arizona Corporation Commission's website for limited liability companies named "Taco Kings #2 LLC" and "Taco Kings #3 LLC" with original incorporation dates of April 26, 2019, and February 16, 2022, respectively.

28. Based on the foregoing, King Taco is informed and believes Defendants may likely expand their locations in the future.

29. King Taco is informed and believes, and based thereon alleges, that Defendants have advertised and promoted, and continue to advertise and promote, their restaurant under the name "TACO KINGS" on their official website and business profiles hosted on Yelp and Facebook. A true and correct screenshot of Defendants' official website is attached hereto as **Exhibit G**. A true and correct screenshot of Defendants' Facebook page is attached hereto as **Exhibit H**. A true and correct screenshot of Defendants' Yelp page is attached hereto as **Exhibit I**.

30. King Taco is informed and believes, and based thereon alleges, that Defendant Taco Kings LLC was formed on or about April 14, 2017, and currently exists as an active Arizona limited liability company. A true and correct screenshot of the Arizona Corporation Commission website showing Defendant Taco Kings LLC's entity information is attached hereto as **Exhibit J**.

31. King Taco is informed and believes, and based thereon alleges, that Defendant Taco Kings #2 LLC was formed on or about April 26, 2019, and currently exists as an active Arizona limited liability company. A true and correct screenshot of the Arizona Corporation Commission website showing Defendant Taco Kings #2 LLC's entity information is attached hereto as **Exhibit K**.

32. King Taco is informed and believes, and based thereon alleges, that Defendant Taco Kings #3 LLC was formed on or about February 16, 2022, and currently exists as an active Arizona limited liability company. A true and correct screenshot of the Arizona Corporation Commission website showing Defendant Taco Kings #3 LLC's entity information is attached hereto as **Exhibit L**.

33. On October 25, 2021, King Taco sent a letter to members of Taco Kings LLC and Taco Kings #2 LLC informing them of King Taco's intellectual property rights and demanding that they cease and desist all uses of the term "TACO KINGS" in connection with Defendants' services.

34. Defendants' counsel responded in a letter dated November 12, 2021, denying the likelihood of confusion caused by Defendants' use of the confusingly similar "TACO KINGS" term, and refusing to cease using that term in connection with Defendants' services.

35. Despite subsequent correspondence between the parties, Defendants failed to cease their trademark infringement and stopped responding to communications from counsel for King Taco.

36. As of the date of this filing, Defendants continue to operate and promote one or more restaurants using the name "TACO KINGS" and to infringe upon the King Taco Marks.

37. Taco King and the King Taco Marks comprise the same components and are nearly identical in sound, sight, and commercial meaning.

38. King Taco is informed and believes, and based thereon alleges, that Defendants, being in the same field as King Taco, providing the same type of restaurant

services as King Taco under a nearly identical mark and being aware of King Taco's marks and reputation associated therewith, continue to use the "TACO KINGS."

39. In fact, since receiving Taco King's October 25, 2021, cease and desist letter, members of Taco King LLC and Taco King #2 LLC formed an additional business entity, Taco King #3 LLC, and registered the trade name "Taco Kings AZ" with the Arizona Secretary of State.

40. Not only did Defendants fail to heed King Taco's demand that they cease their infringing conduct, they appear to have ramped up their efforts to trade off the goodwill and reputation of King Taco and the King Taco Marks.

41. Without authorization from King Taco, and despite the fact that Defendants are in no way affiliated with King Taco, Defendants have operated and advertised, and continue to operate and advertise, one or more restaurants under the name "TACO KINGS."

42. Defendants' unauthorized use of the term "TACO KINGS" in connection with their restaurant services and in their marketing and advertising materials creates a likelihood of consumer confusion because actual and prospective customers are likely to believe that King Taco has approved or licensed Defendants' use of its marks, or that King Taco is somehow affiliated or connected with Defendants or their services because the parties use nearly identical marks in connection with nearly identical restaurant services.

43. In fact, King Taco has not sponsored, licensed, or authorized Defendants' services, and Defendants and their services are not affiliated or connected with King Taco in any way.

44. Because the parties operate in the same region of the United States, and both are likely to continue expanding their locations and operations, relevant consumers will come across both parties' marks.

45. This is especially true as King Taco expands the goods offered under the King Taco Marks via its online store to consumers throughout the U.S.

46. Additionally, given that both parties largely use the Internet and social media to advertise and promote their goods and services, the channels of trade used by the parties are identical and target the same consumers and furthers the likelihood of confusion.

47. Because Defendants' continued infringement of King Taco's trademark rights is likely to confuse or deceive, and on information and belief actually did confuse or deceive, a substantial segment of Defendants' customers into thinking that Defendants' restaurant is one of King Taco's restaurants or otherwise affiliated or sponsored by King Taco, King Taco is forced to take legal action.

## FIRST CLAIM FOR RELIEF

### (Federal Trademark Infringement (15 U.S.C. § 1114))

48. King Taco refers to the allegations contained in paragraphs 1 through 47 above and incorporates them by reference as though fully set forth herein.

49. King Taco exclusively owns the King Taco Marks, which are valid and enforceable.

50. King Taco has used the King Taco Marks in interstate commerce in connection with the advertising and promotion of its restaurant services.

51. Without authorization, Defendants have used and continue to use the name "TACO KINGS" in interstate commerce in connection with their restaurant business.

52. King Taco is informed and believes, and based thereon alleges, that Defendants' unauthorized use of the term "TACO KINGS" has caused, and will likely continue to cause, confusion, mistake, or deception in the relevant consumer market.

53. Defendants' unauthorized use of the term "TACO KINGS" constitutes infringement of King Taco's federally registered trademarks in violation of 15 U.S.C. § 1114.

54. King Taco has suffered, and will continue to suffer, damages as a result of Defendants' unauthorized use of the term "TACO KINGS."

55. King Taco is informed and believes, and based thereon alleges, that Defendants have acted in bad faith and/or willfully in using the term "TACO KINGS" in connection with their restaurant services.

56. Defendants' infringing acts have caused and will continue to cause King Taco to suffer irreparable injuries to its reputation and goodwill. King Taco does not have an adequate remedy at law to recover for this harm, and it is therefore entitled to injunctive relief.

## SECOND CLAIM FOR RELIEF

### (Federal Unfair Competition (15 U.S.C. § 1125(a)))

57. King Taco refers to the allegations contained in paragraphs 1 through 56 above and incorporates them by reference as though fully set forth herein.

58. King Taco is informed and believes, and based thereon alleges, that Defendants' unauthorized use of the term "TACO KINGS" in connection with their restaurant services constitutes a false designation of origin, a false or misleading description of fact, and/or false or misleading representation of fact, and has caused and is likely to cause confusion, mistake, and/or deception as to:

    a. the affiliation, connection, or association of the King Taco Marks with Defendants;

    b. the origin, sponsorship, or approval of Defendants' use of the term "TACO KINGS;" and

    c. the nature, characteristics, or qualities of Defendant's services that are rendered in connection with the term "TACO KINGS."

59. The aforesaid acts constitute unfair competition in violation of 15 U.S.C. § 1125(a).

60. King Taco has suffered, and will continue to suffer, damages as a result of Defendants' unauthorized use of the term "TACO KINGS."

61. King Taco is informed and believes, and based thereon alleges, that Defendants have acted in bad faith and/or willfully in using the term "TACO KINGS" in connection with their restaurant services.

62. Defendants' infringing acts have caused and will continue to cause King Taco to suffer irreparable injuries to its reputation and goodwill.  King Taco does not have an adequate remedy at law to recover for this harm, and it is therefore entitled to injunctive relief.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procedure 38(b), King Taco respectfully demands a jury trial of all issues triable to a jury in this action.

## PRAYER FOR RELIEF

**WHEREFORE**, King Taco requests judgment in its favor and against Defendants as follows:

a. That Defendants, their agents, servants, employees, successors, assigns and attorneys and any related companies, and all persons in active concert or participation with one or more of them be permanently enjoined and restrained from unlawfully using the term "TACO KINGS," or any other mark that is confusingly similar to the King Taco Marks;

b. For an award of compensatory damages in an amount to be determined at trial;

c. For a finding that this is an exceptional case under the Lanham Act;

d. For treble damages pursuant to 15 U.S.C. § 1117;

e. For exemplary damages as authorized by law;

f. For an award of reasonable attorney fees, investigatory fees, and expenses; and

. . . .

. . . .

. . . .

. . . .

1         g.     For any such other relief that the circumstances may require and that the Court deems just and proper.

Dated: April 13, 2022                              Respectfully Submitted,

By:   /s/Gregory P. Sitrick

Gregory P. Sitrick, AZ Bar No. 28756
Gsitrick@messner.com
Messner Reeves LLP
7250 N. 16th St., Suite 410
Phoenix, Arizona 85020
602.457.5059
Facsimile: 303.623.0552
gsitrick@messner.com

Caroline Toto (*pro hac vice pending*)
Caroline.toto@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
725 South Figueroa Street, 36th Floor
Los Angeles, CA 90017-5524
Telephone: 213.488.7100
Facsimile: 213.629.1033

Michelle A. Herrera (*pro hac vice pending*)
michelle.herrera@pillsburylaw.com
Pillsbury Winthrop Shaw Pittman LLP
12255 El Camino Real, Suite 300
San Diego, CA 92130
Telephone: 619.544-3132
Facsimile: 619.236.

*Attorneys for Plaintiff*
*King Taco Restaurant, Inc.*